# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

MICHAEL POLNAC, §
§
*Plaintiff,* §
§
§   CIVIL ACTION NO.  4:20-CV-00666
v. §
§   Judge Mazzant
§
CITY OF SULPHUR SPRINGS, JOSHUA §
DAVIS, and JUSTIN FINDLEY, §
§
*Defendants.* §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Officers Davis and Findley's First Amended Motion to Dismiss (Dkt. #25) and the City of Sulphur Springs' First Amended Motion to Dismiss (Dkt. #26).  Having considered the motion and the relevant pleadings, the Court finds that the Officers' motion should be granted in part and denied in part, and the City's motion should be denied.

## BACKGROUND

This case arises from an incident involving two Sulphur Springs Police Department officers—Joshua Davis ("Officer Davis") and Justin Findley ("Officer Findley") (collectively, the "Officers")—and Plaintiff.[1]  To better understand the lawsuit, the Court lays out the pertinent facts below.

On October 22, 2018, a Sulphur Springs Police Department 911 operator received a call from one of the town's residents.  According to the resident, a woman—later identified as Plaintiff's girlfriend—had asked for assistance in jumpstarting her dead vehicle.  The caller—later

---

[1] Corporal Chris Rosemond ("Corporal Rosemond") is periodically mentioned throughout the pleadings but is not a named party in the action.

identified as a neighbor of Plaintiff's—went to help the woman but was unsuccessful.  The Officers were subsequently dispatched to Plaintiff's home.

When the Officers arrived at Plaintiff's house, only the girlfriend was outside.   The girlfriend reiterated that she needed help jumpstarting her car, and that she just wanted to get home.  As the Officers were speaking with Plaintiff's girlfriend, Plaintiff walked onto his front porch.  Plaintiff informed Officer Findley that the woman needed to leave the premises.  Officer Findley approached Plaintiff and asked for identification.  Plaintiff eventually gave his full name and a set of numbers.[2]  Officer Findley again asked for identification, presumably seeking an identification card, but Plaintiff was adamant that Officer Findley did not need such information.  Officer Davis then reached for a cup Plaintiff was holding, and Plaintiff pulled away from Officer Davis.  This action resulted in Plaintiff being pinned face down on the concrete by Officer Findley and handcuffed by Officer Davis.  Plaintiff was placed under arrest and jailed overnight.  The next day, Plaintiff was presented to a magistrate judge and subsequently bonded out of jail.

Plaintiff was charged with (1) resisting arrest, search, or transportation and (2) interference with public duties.  After Plaintiff's state-court criminal trial, Plaintiff was found not guilty of resisting arrest, search, or transportation.  Subsequent to Plaintiff's acquittal, the interference with public duties charge was dismissed by the District Attorney's Office.  Plaintiff then filed suit against the City of Sulphur Springs ("the City"), Officer Davis, and Officer Findley.  Plaintiff alleges the following causes of action in his Amended Complaint:[3]

- Count I is a claim under 42 U.S.C. § 1983 – Violation of Fourth Amendment Rights to the United States Constitution (Unlawful Arrest) Against Defendants Davis and Findley, Individually and Officially;

---

[2]  According to Plaintiff, the numbers constituted his driver's license number.
[3]  The Amended Complaint filed on December 15, 2020 (Dkt. #23) is operative.

- Count II is a claim under 42 U.S.C. § 1983 – Violation of Fourth Amendment Rights to the United States Constitution (Unreasonable and Excessive Force) Against Defendants Davis and Findley, Individually and Officially; and

- Count III is a claim under 42 U.S.C. § 1983 – *Monell* Claim Against Defendant City of Sulphur Springs.

On December 21, 2020, the Officers filed the present motion (Dkt. #25).  On January 22, 2021, Plaintiff filed a response (Dkt. #35).  On February 4, 2021, the Officers filed a reply (Dkt. #37).

## LEGAL STANDARD

### I.   Judicial Notice

Federal Rule of Evidence 201 provides that a court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).  The Fifth Circuit has held that judicial notice may be taken of "[s]pecific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy."  *Turner v. Lieutenant Driver*, 848 F.3d 687, 692 n.63 (5th Cir. 2017) (quoting *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962)).  If a court takes judicial notice, "on timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed," even if the court takes judicial notice before notifying a party.  Fed. R. Evid. 201(e).

3

## II.    Rule 12(b)(6)

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). When reviewing a motion to dismiss, a district court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion.  First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.  Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.*  "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted).  This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

**Officers' Motion to Dismiss**

The Officers' motion presents two issues to the Court for consideration: (1) "Whether Plaintiff has plead[ed] any plausible Federal claims against Officers Davis and Findley which overcome their Qualified Immunity;" and (2) "Whether Plaintiff has plead[ed] any plausible claim against Officers Davis and Findley in their 'official capacity' which are not duplicative of claims against the City" (Dkt. #25 at p. 3).  The Officers contend that both answers are "no," and, in support, the Officers offer various arguments.[4]  The Officers first claim that "Plaintiff's Amended Complaint fails to state any plausible Federal claims against Officers Davis or Findley" because:

---

[4] The Officers first request the Court take judicial notice of ten exhibits attached to the present motion.  Because the request is a preliminary matter that has evidentiary ramifications on the remainder of the motion, the Court will address it immediately following the summary of the parties' contentions.

(1) "Plaintiff has failed to allege any Federal claims which would overcome Officer Davis and Findley's entitlement to Qualified Immunity[;]" and (2) "Presumed Claims against Officers in their 'Official Capacity' are duplicative" (Dkt. #25 at pp. 15, 24).

Plaintiff responds that he "has sufficiently pleaded facts facially plausible to infer liability for unlawful arrest and excessive force" (Dkt. #35 at p. 6).  Although Plaintiff contends that his Amended Complaint satisfies the Rule 12(b)(6) standard, he alternatively asks for leave to amend if the Court finds the Complaint is deficient.

## I.   Judicial Notice

Before offering substantive arguments regarding Plaintiff's purported deficiencies in his Complaint, the Officers ask the Court to take judicial notice of ten exhibits attached to the Amended Motion to Dismiss.  Specifically, these exhibits are:

- A "[d]isc containing the 911 call on October 22, 2018[;]"

- "Calls for Service Report regarding 911 call[;]"

- A "[d]isc containing videos from body cameras of Office Joshua Davis, Office Justin Findley and Corporal Chris Rosemond[;]"

- "Facebook postings by Plaintiff on October 22, 2018, several hours prior to incident[;]"

- "Hopkins County Clerk public records for the criminal case styled *State of Texas v. Michael Allen Polnac*, Case No. CR1934403, Class A Misdemeanor of Resisting Arrest, County Court [a]t Law of Hopkins County[;]"

- "Information filed on January 31, 2019, in Case No. CR1934403[;]"

- "Texas Commission [o]n Law Enforcement ('TCOLE') Personal Status Report for Joshua Davis[;] . . . and"

- "Texas Commission [o]n Law Enforcement ('TCLOE') Personal Status Report for Justin Findley"

(Dkt. #25 at pp. 3–4).  Plaintiff contends that, if the Court considers the extrinsic evidence presented by the Officers, the present Motion to Dismiss brought under Rule 12(b)(6) would be converted into a Motion for Summary Judgment.  Assuming the conversion were proper, and the Officers' 12(b)(6) Motion did, in fact, become one for summary judgment, Plaintiff asserts that he is entitled to discovery before being required to respond.

As an initial matter, the Fifth Circuit has "note[d] approvingly" that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim.'"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).  According to the Fifth Circuit, "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  *Id.* at 499.  Stated differently: "for a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims."  *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).  Here, only the second and third elements are at issue because the Officers have attached all exhibits which they seek the Court to consider.

The Court will begin by addressing what evidence, if any, is properly subject to judicial notice and therefore properly considered with a Rule 12(b)(6) motion to dismiss.  The Court will also intertwine its analysis with its determination on whether any of the exhibits provided by the Officers are "referred to in the plaintiff's complaint and are central to [his] claim," *Collins*, 224 F.3d at 498–99, though the Officers do not distinguish between the two avenues of proper consideration.  Rather, the

Officers contend that "the foregoing exhibits constitute public records referenced in, albeit not attached to, Plaintiff's Original Complaint" (Dkt. #25 at p. 4). However, the Officers then ask the Court to take judicial notice of all exhibits—despite the fact that the Court may consider documents that are "incorporated into the complaint by reference" *and* those matters that are subject to judicial notice. *Funk*, 631 F.3d at 783.

Following a determination on the propriety of judicial notice, the Court will then determine whether such judicial notice is discretionary or mandatory under Federal Rule of Evidence 201.

### a. Evidence Subject to Judicial Notice or Incorporated in Complaint by Reference[5]

As noted above, certain facts are subject to judicial notice under Federal Rule of Evidence 201. "The doctrine of judicial notice permits a judge to consider a generally accepted or readily verified fact as proved without requiring evidence to establish it." *U.S. v. Berrojo*, 628 F.2d 368, 369 (5th Cir. 1980). Further, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). "A public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said, or done." 64 TEX. JUR. 3d *Records and Recording Laws* § 1 (2021). Notably, "public records, by definition, presume public access." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021).

### i. Disc Containing 911 Call and Body Camera Footage

Both the 911 call and the body camera footage from Davis, Findley, and Rosemond were submitted on a disc attached to the Officers' motion. Although the Officers ask the Court take

---

[5] The Officers contend that "[t]hese exhibits are not being provided as evidence but in order to assist the Court with locating public records, of which the Court may take judicial notice" (Dkt. #25 at p. 5). However, the Officers also note that its motion presents "a discussion about this Court's review and importance of the videos of the incident" (Dkt. #25 at p. 3)—thus indicating that the attached exhibits are, in fact, evidence.

judicial notice of the disc, the Court finds it more prudent to address the evidence separately: beginning with the 911 call and then moving to the body camera footage.

### 1.  911 Call

The Officers do not specify whether they want the Court to take judicial notice of the facts contained *within* the 911 call or the mere fact that a 911 was *placed*.  Rather, the Officers simply request that "the Court take such judicial notice of the exhibits referenced hereto" (Dkt. #25 at p. 5).  Because the Officers rely on Plaintiff's statements regarding the "911 caller" and "that the Officers were dispatched to Jefferson street[,]" (Dkt. #25 at p. 3 n.2) (internal quotations omitted), the Court is persuaded that the Officers are seeking to have the Court consider the facts contained within the call rather than the existence of the call itself, which appears undisputed and is even discussed within the Plaintiff's complaint.

The statements and perceptions referenced in the 911 call—that a woman knocked on the caller's door and asked for help jumpstarting a vehicle; that the woman indicated that she and her boyfriend were fighting; the caller's belief that both Plaintiff and the woman had been drinking or were "on something[;]" that the caller felt the police needed to arrive quickly; that the woman described Plaintiff as "acting really erratic and talking really really crazy[;]" that the woman informed the caller that Plaintiff had guns and weapons in the house; and that the caller repeatedly stressed the existence of such weapons to the 911 dispatcher (Dkt. #25 at p. 6)—are neither "generally known within the trial court's territorial jurisdiction" nor "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The 911 call is not shown to be a public record, except by way of argument of the Officers.  Further, no official markings appear on the submitted disk to authenticate the 911 call. Although 911 calls, assuming "the district makes or retains copies or takes of any incoming calls[,]" are "subject to the

Open Records Act[,]" *see* Tex. Att'y Gen. ORD-519 (1989), no precedent is cited by the Officers for the proposition that the Court may take judicial notice of  the facts contained within the call rather than take judicial notice of the existence of the call itself as a public record.  As such, the facts contained within the 911 call are not properly subject to judicial notice.

Further, the facts contained within the 911 call are not "documents incorporated into the complaint by reference." *Funk*, 631 F.3d at 783.  Even though some courts have held "documents" to be inclusive of videos as well, *see Ayala v. Aransas Cnty.*, No. 2:15-CV-335, 2018 WL 10373638, at *2 (S.D. Tex. Jan. 16, 2018); *see also Verizon Directories Corp. v. Yellow Book USA, Inc.*, 309 F. Supp. 2d 401, 404 (E.D.N.Y. 2004), even that expansion does not suffice to bring the facts of the 911 call into consideration at the Rule 12(b)(6) stage.

Plaintiff's complaint generally mentions the 911 call.  Specifically, Plaintiff states that: (1) the Officers "were dispatched to Jefferson Street on or about 6:15 P.M.[;]" (2) "[t]he 911 caller stated she had tried to help jumpstart [Plaintiff's] girlfriend's car but failed and that [Plaintiff's] girlfriend did not appear to be assaulted[;]" and, arguably, (3) "[n]o crime had been reported" (Dkt. #23 at p. 9).  However, Plaintiff does not pull direct quotes from the 911 call.  Plaintiff further does not provide a hyperlink to the 911 call, nor does Plaintiff attach the 911 call as an exhibit. Because the references to the 911 call are vague, the Court does not find the requisite incorporation into the Complaint that would then allow the Court to consider the facts of the 911 at the 12(b)(6) stage.[6]

---

[6] The Court makes no determination as to the admissibility—at the summary judgment stage or otherwise—of the 911 call.  Rather, the Court limits its decision as to the considerations it may take at the present stage of litigation.

## 2. **Body Camera Footage**

The Court will not take judicial notice as to the body camera footage.[7]  The actions and statements contained within the videos are neither "generally known within the trial court's territorial jurisdiction" nor "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b).  Further, there is no indication that the body camera footage is public record, other than on argument of the Officers.  Thus, the contents of the body camera footage are not properly subject to judicial notice.

The Court also does not find that Davis, Findley, and Rosemond's body camera footage is considered "documents incorporated into the complaint by reference."  *Funk*, 631 F.3d at 783.  While "documents" could be, and has been, extended to videos,  *See Ayala*, 2018 WL 10373638, at *2; *see also Verizon Directories Corp.*, 309 F. Supp. 2d at 404, the Court need not expand such logic in the present case.  Plaintiff does not cite to the body camera footage—rather, Plaintiff merely provides various statements in quotation marks.  While it is possibly that the quotes did, in fact, come from the body camera footage, it is equally likely that the quotes came from Plaintiff's own recollection.  Because the source of the quotes remains unclear, and there are no additional facts indicating that Plaintiff utilized the body camera footage in any way while drafting his Amended Complaint, the Court finds the body camera footage of Davis, Findley, and Rosemond is not sufficiently incorporated into the Complaint.  Thus, the footage is not a proper point of consideration at the Rule 12(b)(6) stage.[8]

---

[7] The Officers again do not differentiate between the facts contained within the body camera footage and the existence of the body camera footage.  Because the defense promulgated by the Officers relies not on the existence of the footage but on the contents thereof, the Court will analyze the Officers' request through that lens.

[8] In the Court's view, after consideration of the Amended Complaint and the facts contained therein, the body camera footage is evidence likely to be more properly considered at the summary judgment stage of the litigation.

### ii.   Call for Service Report Regarding 911 Call

The Officers also ask the Court to take judicial notice of the Calls for Service Report regarding the relevant 911 call.  The report, prepared by the Sulphur Springs Police Department, is essentially a record of the 911 call.  "What is a public record is a question of law[,]" 64 TEX. JUR. 3d *Records and Recording Laws* § 1 (2021) (citing *Morris v. Smiley,* 378 S.W.2d 149 (Tex. Civ. App.—Austin 1964, writ ref'd)), and the Court, after considering the definition of a public record and the contents of the Call for Service Report, is satisfied that the report meets the definition of a public record.  Because the report is a public record, the Court may take judicial notice of it and consider it for Rule 12(b)(6) purposes.

Importantly, however, the Court finds it prudent to qualify its taking of judicial notice.  As noted in the section analyzing the 911 call itself, the facts contained in the call are not subject to judicial notice.  The truth of the facts contained in the report are certainly far from being "not subject to reasonable dispute."  *See* FED. R. EVID. 201(b).  As such, the Court limits its judicial notice to the fact that a report was written, that the dispatcher wrote certain remarks on the report, and that a 911 call was made.  The accuracy of the remarks in the report remain a topic of dispute, and the Court finds the accuracy of those statements to be improper for judicial notice.

The Court further finds that the facts contained with the Report are not sufficiently incorporated into Plaintiff's Complaint as to warrant proper 12(b)(6) evidence.  As analyzed above, the Court did not find Plaintiff's vague references to the 911 call sufficient to incorporate the contents of the call into the Complaint.  Further, Plaintiff only made, at most, three statements regarding the 911 call.  Plaintiff never referenced the Call for Service Report at all.  Thus, there was no incorporation into the Complaint, and the Court cannot consider the contents of the Report at the 12(b)(6) stage under such theory.

### iii.  Facebook Postings

The Officers next ask the Court to take judicial notice of a Facebook status posted by Plaintiff.  The Officers also submit screenshots showing the corresponding comments posted on the Facebook status.

The screenshots of Plaintiff's Facebook status—along with the screenshots of the comments written by both Plaintiff and Facebook friends of Plaintiff—in no way constitute public records.  These postings are not those "required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said, or done."  64 TEX. JUR. 3d *Records and Recording Laws* § 1 (2021).  Further, the content of the postings are not "generally known within the trial court's territorial jurisdiction" nor "accurately and readily determined from sources whose accuracy cannot be questioned."  FED. R. EVID. 201(b), thus making the Facebook postings inappropriate for judicial notice.[9]  Although the Officers assert that the postings are "a public record and also a statement against interest[,]" (Dkt. #25 at p. 4), the Court finds the statement-against-interest argument inapposite: that objection is ordinarily reserved as a response to a hearsay objection and is, without further elaboration and argument by the Officers, irrelevant.

Further, Plaintiff makes no mention of or reference to the Facebook postings in his Complaint, thereby eliminating the possibility that the postings are competent 12(b)(6) evidence under an incorporation theory.

### iv.  Hopkins County Clerk public records

The Officers also request the Court take judicial notice of the records created by the Hopkins County Clerk relating to Plaintiff's criminal case.

---

[9] The Court again assumes that the Officers are asking the Court to take judicial notice of the contents of the Facebook postings rather than the mere fact that the post was made.

"Judicial records are public records." *Binh Hoa Le*, 990 F.3d at 416.  "Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice." *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018) (first citing FED. R. EVID. 201; and then collecting cases).  Because the criminal case records from Hopkins County are "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned[,]" *Taylor v. Charter Med. Corp.*, 162 F.3d 827, 829 (5th Cir. 1998) (quoting FED. R. EVID. 201(b)), the Court finds these records proper for judicial notice.  The Court will therefore take judicial notice of the records and the criminal cases numbers CR1934403 and CR1934404.

Because the Court takes judicial notice of the records in their entirety, it need not determine whether the records are incorporated into the Complaint.  Notably, however, Plaintiff does discuss, at length, his criminal court case.  Thus, even if the records were not public and capable of judicial notice, the Court would likely still have been able to consider the documents at this stage of the litigation under an incorporation theory.

### v.  Informations

The Court adopts its analysis of the Hopkins County Clerk public records, of which the Court took judicial notice, for the Informations filed in CR1934403 and CR1934404.[10]  The Informations were filed as part of the criminal case, which the Court has found "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." *Taylor*, 162 F.3d at 829.  The Informations are public records that detail what crimes Plaintiff was charged with in Hopkins County.  Importantly, the Informations do not detail the pertinent and disputed facts surrounding the alleged incident—rather, they detail the elements of the state court crimes

---

[10] The Officers ask the Court to take judicial notice of the "Information filed on January 31, 2019, in Case No. CR1934403, attached as Exhibit No. 8" (Dkt. #25 at p. 4).  Upon investigation of Exhibit 8, however, it is the filings of the Informations in Case No. CR1934404—not CR1934403.  The Court will therefore consider Exhibit 8 as it relates to Case No. CR1934404, rather than how it is labeled by the Officers in their motion.

with which Plaintiff was charged.  Further, Plaintiff openly admits the nature of the charges for which he was arrested, despite disagreeing as to their propriety.

Taking the contents of the Informations, along with the public record nature of the documents and Plaintiff's reference to the charges detailed in his Complaint, the Court finds that consideration of the Informations is proper at the Rule 12(b)(6) stage.

### vi.  TCOLE Personal Status Reports

Finally, the Officers ask the Court to take judicial notice of the TCOLE Personal Status Reports of both Officer Davis and Officer Findley.

According to the TCOLE, a police officer's "personal status report, a report of [his] training, certificates, and length of service is a public record and releasable to anyone that requests under Chapter 552 of the Government Code (Open Records Act)."  *Frequently Asked Questions*, TEXAS COMMISSION ON LAW ENFORCEMENT, www.tcole.texas.gov/content/frequently-asked-questions (last accessed May 11, 2021).  As such, the reports may be judicially noticed.  Because the reports may be judicially noticed, the Court may consider them when analyzing the Officers' Rule 12(b)(6) motion—despite Plaintiff not incorporating the reports into his Complaint.

In accordance with the foregoing, the Court has determined that certain exhibits proffered by the Officers are properly subjected to judicial notice: (1) the Call for Service Report;[11] (2) the Hopkins County public records regarding criminal case numbers CR1934403 and CR1934404; (3) the Informations filed in CR1934403; and (4) the TCLOE personal status reports of Officer Davis and Officer Findley.[12]   The Court must now determine whether taking judicial notice of the

---

[11] The Court limited the scope of the Call for Service Report to the fact the report was made, that the dispatcher wrote certain remarks on the report, and that the 911 call was made.
[12] The corresponding numbers of the exhibits are, respectively, 2, 5, 6, 7, 8, 9, and 10.

aforementioned exhibits is mandatory or discretionary, and, if discretionary, whether the Court chooses to take such notice.

### b. Mandatory or Discretionary Under FRE 201

Rule 201(c) governs whether the Court has discretion in taking judicial notice: "The court: may take judicial notice on its own; or must take judicial notice if a party requests it and the court is supplied with the necessary information." FED. R. EVID. 201(c).  The Officers have requested the Court take judicial notice of the exhibits analyzed above.  Further, the Court was supplied with copies of the public records—the Call for Service Report, the Hopkins County Clerk records regarding the criminal cases, the Informations filed in CR1934403 and CR1934404, and the TCOLE Personal Status Reports of Officer Davis and Officer Findley.  Upon inspection of the attached documents, the Court is satisfied that the Officers have provided the necessary information required to make judicial notice mandatory under Rule 201(c).  As such, the Court takes judicial notice of Exhibit 2, subject to the limitations of: (1) the fact the report was made, (2) the dispatcher wrote certain remarks on the report, and (3) the 911 call was made, and Exhibits 5–10 without such limitations.

The Court may consider the matters over which it has taken judicial notice for the Officers' Rule 12(b)(6) motion.  The Court now addresses the substantive arguments offered by the Officers.

## II.  Section 1983 Claims

The Officers assert that "Plaintiff cannot demonstrate any conduct of [the Officers] which would defeat their entitlement to qualified immunity, particularly in light of the conduct of Plaintiff and the responding Officers" (Dkt. #25 at p. 15).  According to the Officers, "Plaintiff has not sufficiently alleged in a non-conclusory manner . . . that he sustained any legally cognizable physical injuries arising from objectively unreasonable use of force by the[] Officers" (Dkt. #25

at p. 15).  The Officers further allege that "Plaintiff's false arrest claims are equally untenable as the causal chain was broken twice when he was arraigned by a Magistrate then subsequently charged by the County Attorney through filing of criminal cases[,]" but "even if it were not, Plaintiff's own allegations, underscored by the public records, confirm that far more than ample probable cause existed for his arrest for the offenses of Resisting Arrest and Interference with Public Duties" (Dkt. #25 at p. 15).

Plaintiff responds that he "has sufficiently pleaded facts facially plausible to infer liability for unlawful arrest and excessive force" (Dkt. #35 at p. 6).  Plaintiff argues that Section Five of his First Amended Complaint "clearly pleads summarized facts showing [the Officers], under color of law, violated Plaintiff's clearly established U.S. constitutional rights when they objectively had no probable cause for arrest and used excessive force" (Dkt. #35 at p. 6).

"Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted); *see also* 42 U.S.C. § 1983.  "[T]here can be no § 1983 liability" unless a plaintiff has "suffered a constitutional violation . . . at the hands of . . . a state actor."  *Doe ex rel. Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 867 (5th Cir. 2012) (en banc).

Accordingly, for a § 1983 claim to survive a motion to dismiss under Rule 12(b)(6), "the plaintiff must allege that (1) a state actor, i.e., a person or entity acting under color of state law, (2) deprived the plaintiff of a federal constitutional right."  *Reitz v. City of Abilene*, No. 1:16-CV-0181-BL, 2017 WL 3046881, at *11 (N.D. Tex. May 25, 2017); *accord Calhoun v. Mejia,* No. A-08-CA-135-SS, 2008 WL 11411254, at *3 (W.D. Tex. May 20, 2008) (quoting 42 U.S.C. § 1983). And when a "motion to dismiss raises the defense of qualified immunity, the plaintiff 'must plead

specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm . . . alleged and that defeat a qualified-immunity defense with equal specificity.'" *McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2017) (quoting *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014)), *cert. denied*, 138 S. Ct. 739 (2018)

Public officials whose positions entail the exercise of discretion may be protected from personal liability by the defense of qualified immunity.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant asserts qualified immunity and establishes that the alleged actions were conducted pursuant to the exercise of discretionary authority, the burden then shifts to the plaintiff to rebut this defense.  *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  First, a court must determine whether a "constitutional right would have been violated on the facts alleged."  *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004).  Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known."  *Id.*

A law is "clearly established" if a reasonable official would understand that his or her conduct violates the asserted right.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The official's subjective motivation is irrelevant to the qualified-immunity defense, except as far as it is relevant to the underlying constitutional claim.  *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998).  The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.  *See id.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be

addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*,

555 U.S. 223, 236–37 (2009).

### a. Excessive Force

The Court will first address Plaintiff's excessive force claim.  The Officers argue that, after

both the application of the applicable *Graham*[13] factors and watching the videos, "it is clear that

the actions of Officers Davis and Findley were objectively reasonable under the totality of the

circumstances" (Dkt. #25 at p. 19).  The Officers further contend that "Plaintiff did not sustain any

cognizable injuries sufficient to support a viable excessive force claim" (Dkt. #25 at p. 19).

Plaintiff contends that he "did not pose a threat to either officer[] or try to run away[,]" and

that he "asserts facts that he verbally complied with [the Officers'] request for identification but in

a tone of voice that [the Officers] did not like, which was the reason why [the Officers] shove[d]

down and jumped on top of Plaintiff" (Dkt. #35 at p. 12).

### i. Violation of Constitutional Right

The Court begins by noting that there is no generic "excessive force" standard by which to

govern Plaintiff's claims.  *See Graham*, 490 U.S. at 393 ("We reject this notion that all excessive

force claims brought under § 1983 are governed by a single generic standard.").  Rather, the Court

must first "identify[] the specific constitutional right allegedly infringed by the challenged

application of force."  *Id.* at 394 (citing *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  "In most

instances, that will be either the Fourth Amendment's prohibition against unreasonable seizures of

the person, or the Eighth Amendment's ban on cruel and unusual punishments, which are the two

primary sources of constitutional protection against physically abusive governmental conduct."

*Id.*

---

[13] The Court will analyze the factors found in *Graham v. Connor*, 490 U.S. 386 (1989), during its analysis of whether the Officers violated a Constitutional right of Plaintiff on the facts alleged.

Relevant to the present case, "[w]hen a plaintiff alleges excessive force during an investigation or arrest, the federal right at issue is the Fourth Amendment right against unreasonable seizures." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Graham*, 490 U.S. at 394 (1989)). "The Fourth Amendment provides protections against an officer's use of excessive force to effect an arrest or other seizure." *Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021) (citing *Graham*, 490 U.S. at 389, 394). "To prevail on an excessive-force claim, [Plaintiff] must show '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). "The second and third elements collapse into a single objective reasonableness inquiry, guided by the following *Graham* factors: 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018) (quoting *Graham,* 490 U.S. at 396) (internal citation omitted).

### 1.  Injury

Beginning with the first element, the Officers heavily dispute that Plaintiff was injured. Specifically, the Officers contend that "Plaintiff's allegations about his injuries, amplified by the videos, do not indicate that the force used was inherently excessive or unreasonable[,]" and "Plaintiff alleges only very minimal, if really any, injury arising from the application of the handcuffs and being held on the ground by the Officers" (Dkt. #25 at p. 21).

"Although a showing of 'significant injury' is no longer required in the context of an excessive force claim, '[the Fifth Circuit] do[es] require a plaintiff asserting an excessive force claim to have suffered at least some form of injury.'" *Glenn v. City of Tyler*, 242 F.3d 307, 314

(5th Cir. 2001) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 2001) (some internal quotation marks omitted).   "The injury must be more than a *de minimis* injury and must be evaluated in the context in which the force was deployed." *Id.* (italics added).  Though "certain injuries are so slight that they will never satisfy the injury element, *see e.g. Glenn*, 242 F.3d at 314 (holding that 'handcuffing too tightly, without more, does not amount to excessive force'), psychological injuries may sustain a Fourth Amendment claim." *Flores*, 381 F.3d at 397–98 (citing *Dunn v. Denk*, 79 F.3d 401, 402 (5th Cir. 1996) (en banc)).  "In the case of a psychological injury," however, "'[o]nly substantial psychological injuries are sufficient to meet the injury element of a claim for excessive force under the Fourth Amendment.'" *Mohamed for A.M. v. Irving Indep. Sch. Dist.*, 300 F. Supp. 3d 857, 891 (N.D. Tex. 2018) (quoting *Carter v. Diamond URS Huntsville, LLC,* No. Civ. A. H-14-2776, 2016 WL 8711499, at *5 (S.D. Tex. Sept. 30, 2016)).

Plaintiff has alleged that the Officers "grabb[ed] [Plaintiff's] arms behind his back and shov[ed] [Plaintiff] to the ground" (Dkt. #23 at p. 5).  Further, Plaintiff contends that the Officers threw "the weight and force of both of their bodies onto [Plaintiff] down to the ground" (Dkt. #23 at p. 5).  Plaintiff stated he was "pinn[ed]" on the ground for over two minutes (Dkt. #23 at p. 6). According to Plaintiff, he sustained several physical injuries, including "injuries to his hip, left elbow, right forearm, and wrists" (Dkt. #23 at p. 15).

The Officers cite *Freeman v. Gore* to support their assertion that Plaintiff has not alleged injuries sufficient to support an excessive force claim.  Unlike the plaintiff in *Freeman*, however, Plaintiff here is alleging more than mere "incidental injuries that occur in connection with the use of handcuffs to effectuate an arrest."   483 F.3d 404, 417 (5th Cir. 2007) (citations omitted). Bearing in mind that "[e]xcessive force claims are necessarily fact-intensive[,]" and "whether the

force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case[,]'" *Deville v. Mercantel*, 567 F.3d 156, 167 (5th Cir. 2009), the Court is persuaded that Plaintiff has alleged facts sufficiently showing an injury resulted from the Officers' use of force.  Notably, Plaintiff has alleged that Plaintiff was pinned to the ground.  Plaintiff has alleged that the force of Officer Findley's body weight leveraging into Plaintiff's back caused injuries to his hip, left elbow, and right forearm.  The Officers even concede that "a single small scrape" existed on Plaintiff's "right wrist area" and a "small bloody scrape" existed on Plaintiff's "left elbow" (Dkt. #25 at p. 21).  While these injuries may not arise to the level of debilitating, "[a] plaintiff is no longer required to prove significant injury to assert a section 1983 Fourth Amendment excessive force claim."  *Harper v. Harris Cnty., Tex.*, 21 F.3d 597, 600 (5th Cir. 1994) (citing *Knight v. Caldwell*, 970 F.2d 1430, 1432 (5th Cir. 1992), *cert. denied*, 507 U.S. 926 (1993)).  Because Plaintiff has alleged injuries resulting from his impact with the ground and with the Officers' bodies that amount to more than mere "incidental injuries" resulting from "the use of handcuffs to effectuate an arrest[,]" *Freeman*, 483 F.3d at 417, the Court is persuaded that those "facts and circumstances" support a finding that Plaintiff has sufficiently pleaded an injury for Rule 12(b)(6) purposes.

The Officers specifically note that "when expressly asked by [Corporal] Rosemond if he was injured, without hesitation Plaintiff answered no" (Dkt. #25 at p. 21).  However, Plaintiff's answer is contradicted by the pleadings of physical injuries on Plaintiff's body.  The Court does not speculate as to why Plaintiff did not express the extent of his injuries to Rosemond when asked; however, the Court further does not find this answer—especially considering it was given at a time of heightened emotions—sufficient to negate the physical injuries Plaintiff properly pleaded to have suffered at the hands of the Officers.  As such, the Officers' reliance on this interaction is

unpersuasive and does not serve to effectively contradict both the visible injuries on and the pleadings of Plaintiff.

## 2. *Graham* Factors

As noted above, "[e]xcessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville*, 567 F.3d at 167 (quoting *Graham*, 490 U.S. at 167). "In making this determination, a court should consider the totality of the circumstances, 'including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Darden v. City of Fort Worth, Tex.*, 880 F.3d 722, 728–29 (5th Cir. 2018) (quoting *Graham*, 490 U.S. at 396). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. Notably, "the Court's inquiry is 'whether the officer['s] actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Eachus v. Steelman*, No. 4:20-CV-00324, 2021 WL 857988, at *9 (E.D. Tex. March 8, 2021) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (alterations in original)).

The first *Graham* factor—the severity of the crime at issue—does not support a finding that the force used by the Officers was reasonable. The Officers were dispatched to Plaintiff's home after receiving a 911 call from a neighbor. According to Plaintiff's Complaint, the 911 caller

merely stated that "she had tried to help jumpstart [Plaintiff's] girlfriend's car but failed[,] and that [Plaintiff's] girlfriend did not appear to be assaulted" (Dkt. #23 at p. 3).  Further according to the Complaint, "[a]t no time did the girlfriend state or present[] to the [O]fficers that domestic violence or any description of a crime had been committed or attempted by [Plaintiff]" (Dkt. #23 at p. 4). After receiving the 911 call, the Officers arrive at Plaintiff's home.  Plaintiff's girlfriend, the only person outside, allegedly did not appear frightened, nor did she assert that any violence towards her had occurred.  Looking solely to the pleadings and allegations—and construing the facts in a light most favorable to Plaintiff—the Court cannot determine that the Officers were called to do any more than help a woman jumpstart her vehicle.  That, in itself, is not a crime.

Insofar as the Officers' assert that the force was used in response to Plaintiff's failure to identify, the Court finds that argument equally unavailing.  First, the Officers were initially on scene due to Plaintiff's failure to identify.  Further, Plaintiff did not ever actually fail to identify himself.

The Texas Penal Code, in relevant part, provides that failure to identify occurs either when "[a] person . . . intentionally refuses to give his name, residence address, or date of birth to a peace officer who has lawfully arrested the person and requested the information" or when "[a] person . . . intentionally gives a false or fictitious name, residence address, or date of birth to a peace officer . . . ."  TEX. PENAL CODE § 38.02 (West).

Plaintiff gave his full legal name and drivers license number when asked by the Officers. Notwithstanding the fact that the Officers were not on scene to arrest Plaintiff, there was no failure to identify under Texas law.  Even if Plaintiff had, in fact, failed to identify himself, § 38.02(c) and (d) of the Texas Penal Code provide that this type of offense level ranges from a Class C to a Class A misdemeanor.  *See* TEX. PENAL CODE 38.02(c) and (d) (West).  Thus, even if Plaintiff had

committed a violation for failure to identify, the crime is fairly minor and entirely non-violent. The Court is not convinced, at the Rule 12(b)(6) stage, that even the failure to identify warrants the force used by the Officers.  This factor therefore supports finding the force was excessive and unreasonable.

The Court finds the second *Graham* factor—whether the suspect poses an immediate threat to the safety of the officers or others—also supports a finding that the force was excessive and unreasonable.  As noted in *Graham*, "'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment."  *Id*. at 396 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)).  Plaintiff emerged from his home and stood on his porch upon the Officers' arrival. Shortly thereafter, the Officers approached Plaintiff and repeatedly asked for his identification.  Plaintiff "provided [the identification] by stating his full legal name and his driver's license number" (Dkt. #23 at p. 4).  When the Officers asked for physical identification, Plaintiff "stated he did not need to show identification because he was at his house" (Dkt. #23 at p. 4).  According to Plaintiff, "because [he] refused to show an identification card, raised his voice, and used [profanity] as part of his freedom of speech, Officer Davis then shouted at [Plaintiff] and tried to grab a cup held by [Plaintiff]" (Dkt. #23 at p. 4). Plaintiff "did pull the cup from Officer Davis' immediate grasp" (Dkt. #23 at p. 5).  However, Plaintiff "was unarmed and made no physical or verbal threat toward either officer before [the Officers] arrested him" (Dkt. #23 at p. 5).  Also noted in Plaintiff's Complaint, "[n]either police officer even attempted to pat down [Plaintiff] for possible weapons" (Dkt. #23 at p. 5).

At most, Plaintiff's threatening behavior was his aggressive, profane language and his pulling of a cup from Officer Davis' grasp.  There is no indication that Plaintiff posed any risk to his girlfriend, who was not in the vicinity of the altercation.  Regarding the Officers, they either

knew Plaintiff did not have  weapon or were not concerned with the possibility.  Further, Plaintiff's

Complaint emphasizes that Plaintiff was not physically threatening the safety of the Officers.

While Plaintiff was on the ground, "Officer Davis stated: '[w]e were just trying to identify you,

but you want to raise your voice and start using profanity'" (Dkt. #23 at p. 6).  Per the presented

pleadings and allegations, there is no real indication that the Officers actually perceived Plaintiff

as an immediate threat.  Even considering that the Officers were required to make split-second

decisions, the Court finds the facts as alleged in Plaintiff's First Amended support a finding that

the force used was unreasonable at the Rule 12(b)(6) stage.

The third *Graham* factor—whether the suspect is actively resisting arrest or attempting to

evade arrest by flight—also weighs against finding the Officers' actions as reasonable.  "[W]here

an individual's conduct amounts to mere 'passive resistance,' use of force is not justified."

*Trammell v. Fruge*, 868 F.3d 332, 342 (5th Cir. 2017); *see also Hanks v. Rogers*, 853 F.3d 738,

746 (5th Cir. 2017) (determining the plaintiff's initial refusal to follow police officer's instructions

amount to, "at most, passive resistance," and did not justify the officer's use of a "'half spear'

takedown" against the plaintiff);  *Deville*, 567 F.3d at 168 (plaintiff's refusal to get out of her car

before her husband arrived on the scene constituted passive resistance).  Sometimes, "[i]t is unclear

at what point passive resistance becomes the sort of active resistance which justifies force."

*Trammell*, 868 F.3d at 341 (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730 (5th Cir.

2000)).  Regarding *Goodson*, the Fifth Circuit noted:

> For example, in *Goodson*, two police officers stopped the plaintiff, believing that
> he matched the description of an individual suspected of assault.  [202 F.3d at 733].
> One of the police officers instructed the plaintiff to 'put his hands on the [police]
> car.'  *Id*. at 734.  The plaintiff claimed that before he could comply the officer
> grabbed his arm.  *Id*.  The plaintiff 'stated that he pulled his arm away from [the
> officer] in surprise and stumbled back in an attempt to regain his balance and
> maintain a little distance from the police officers.'  *Id*.  Thereafter, the plaintiff
> claimed the two officers together tackled him to the ground.  *Id*.  In reversing the

> district court's summary judgment based on qualified immunity, this Court held
> that a fact question 'exist[ed] as to the objective reasonableness of the force used'
> under the circumstances.  *Id.* at 740.  The Court did not describe the plaintiff's
> decision to pull his arm away from the officers as resistance.  *Id.*  And given that
> the officers lacked reasonable suspicion to detain or frisk the plaintiff and that the
> plaintiff was not fleeing, the Court declined to conclude that the plaintiff's decision
> to pull away from the officers justified the amount of force used.  *Id.*

*Trammell*, 868 F.3d at 341 (quoting *Goodson*, 202 F.3d at 733–34, 740).

All three *Graham* factors support finding the Officers' conduct unreasonable and excessive.  Further, Plaintiff's Complaint alleges Officer Findley exerting continued force on Plaintiff's back, despite Officer Davis subduing Plaintiff with handcuffs.  As noted above, at the time of Plaintiff's arrest, the crime for which he was being arrested for was unclear.  According to Plaintiff, "neither Officer Davis nor Findley investigated any crime allegedly committed by [Plaintiff] for which they came onto his private property" (Dkt. #23 at p. 7).  Further, Plaintiff asserts that "[a]fter Plaintiff stated he did nothing wrong[,] and [he] stated that Officer Findley could not tell him what was going on, Officer Findley responded, 'I'm choosing to not tell you what's going on'" (Dkt. #23 at p. 7).  Plaintiff "was jailed overnight, despite continually asking for information but never being told for what charge he was arrested" (Dkt. #23 at p. 7). Ultimately, Plaintiff was charged with "resisting arrest, search, or transportation" and "interference with public duties" (Dkt. #23 at pp. 7–8).

Based on Plaintiff's Complaint, it appears Plaintiff's only physical resistance was his attempt to pull his cup away from Officer Davis.  Further, the Officers were at Plaintiff's home, presumably, to help Plaintiff's girlfriend jumpstart her car.  The Officers did not witness any interaction between Plaintiff and his girlfriend that would indicate any form of domestic violence, and the alleged wrong Plaintiff committed—according to Plaintiff's Complaint—was failing to

identify himself and using profane language.  Thus, the Court does not find Plaintiff was resisting arrest to the point where the Officers' use of force was reasonable at this stage in the litigation.

The Court therefore holds that Plaintiff has stated a plausible claim alleging a violation of his constitutional right to be free from excessive force.  Next, the Court will determine whether the Officers' actions violated a clearly established right.

### ii.  Clearly Established Law

"Officers' conduct violates a clearly established right when there is 'controlling authority . . . that defines the contours of the right in question with a high degree of particularity.'" *Aguirre*, 995 F.3d at 415 (quoting *Linicomn v. Hill*, 902 F.3d 529, 538 (5th Cir. 2018) (citations and internal quotations marks omitted)).  "The central concept is that of 'fair warning': The law can be clearly established 'despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.'"  *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)).  "'[I]n an obvious case,' the *Graham* excessive-force factors themselves 'can 'clearly establish' the answer, even without a body of relevant case law.'"  *Newman v. Guedry*, 703 F.3d 757, 764 (5th Cir. 2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)).  "It has long been clearly established that, when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary, injurious force against a restrained individual, even if the person had previously not followed commands or initially resisted the seizure." *Aguirre*, 995 F.3d at 416 (citing *Curran v. Aleshire*, 800 F.3d 656, 661 (5th Cir. 2015)).  Further, the Fifth Circuit has acknowledged that "at least five other circuits have held that, even in the absence of a previous case with similar facts, 'it [is] clearly established . . . that exerting significant, continued force on a person's back while that person is in

a face-down prone position after being subdued and/or incapacitated constitutes excessive force.'" *Id.* (quoting *McCue v. City of Bangor*, 838 F.3d 55, 64 (1st Cir. 2016) (cleaned up) (collecting cases, including *Abdullahi v. City of Madison*, 423 F.3d 763, 769 (7th Cir. 2005); *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008); *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1057 (9th Cir. 2003); and *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 903 (6th Cir. 2004)).

After considering applicable precedent and Plaintiff's Complaint, the law at the time of Plaintiff's arrest clearly established that it was objectively unreasonable for the Officers to forcefully throw down and pin an individual on the ground who was not fleeing, not violent, only used strong language, and—at most—pulled his cup away when the Officers reached for it.  *See Aguirre*, 995 F.3d at 416 ("It has long been clearly established that, when a suspect is not resisting, it is unreasonable for an officer to apply unnecessary, injurious force against a restrained individual, even if the person had previously not followed commands or initially resisted the seizure."); *see also Goodson*, 202 F.3d at 733–34, 740 (plaintiff's pulling away from the officers did not justify the amount of force used when the officers had no reasonable suspicion to detain or frisk the plaintiff and the plaintiff was not fleeing).  While the Court acknowledges the facts presented here are different than those in *Goodson*, the underlying rationale serves as a fair warning to the Officers.  At the time of the incident, Plaintiff had not committed a crime that the Officers had witnessed which would give them reasonable suspicion to detain and frisk Plaintiff in the first place.  Accordingly, the Court finds the Officers are not entitled to qualified immunity for their use of force at this early stage of the litigation.

### b.  Unlawful Arrest

Plaintiff also brings a claim for unlawful arrest, which the Officers assert should be dismissed "for two equally compelling reasons" (Dkt. #25 at p. 21).  The Officers first argue that "the causal chain was broken when the reviewing Judge determined that probable cause existed, then again when the criminal cases were filed by an Information submitted by the Hopkins County Attorney's Office" (Dkt. #25 at p. 21).  Second, the Officers claim that "even without the causation problem, as the videos clearly establish, the Plaintiff was clearly committing the criminal offenses for which he had been arrested and subsequently prosecuted—Interference with Public Duties and Resisting Arrest" (Dkt. #25 at p. 21).[14]  Regarding the Officers' right to qualified immunity, the Officers contend "Plaintiff cannot plead any cognizable False Arrest claim which overcomes Officers Davis and Findley's Qualified Immunity" (Dkt. #25 at p. 21).

Plaintiff responds that he "has sufficiently pleaded fact[s] for unlawful arrest[,]" and "a reasonable officer would not have arrested Plaintiff by these facts" (Dkt. #35 at p. 12).  Rather, Plaintiff contends that "these officers were angry at Plaintiff's foul mouth and loud voice[,]" and "Plaintiff was arrested merely because these unreasonable officers did not like the tone of Plaintiff['s] verbal answers" (Dkt. #35 at p. 12).

### i.  Causal Chain

As an initial matter, the Court is persuaded that the Officers' argument regarding the causal chain is better classified as an argument invoking the independent-intermediary doctrine.

The independent-intermediary doctrine "becomes relevant when—as here—a plaintiff's claims depend on a lack of probable cause to arrest him." *Buehler v. City of Austin/Austin Police Dep't.*, 824 F.3d 548, 553 (5th Cir. 2016) (first citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d

---

[14] Of note, the Court did not take judicial notice of the body camera footage.

808, 813 (5th Cir. 2010); and then citing *Russell v. Altom*, 546 F. App'x 432, 436–37 (5th Cir. 2013)).  "Under the independent-intermediary doctrine, 'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation.'"  *Winfrey v. Rogers*, 907 F.3d 483, 496 (5th Cir. 2018) (quoting *Jennings v. Patton*, 644 F.3d 297, 300-01 (5th Cir. 2011) (internal quotations omitted)).

Notably, the Fifth Circuit has "applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler*, 824 F.3d at 554 (first citing *Taylor v. Gregg*, 36 F.3d 453, 455, 456–57 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc) (regarding intermediary's action occurring after arrest); then citing *Russell*, 546 F. App'x at 434, 436–37 (regarding application of the independent intermediary doctrine when arrestee was never convicted of any crime); and then citing *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (also regarding application of the independent-intermediary doctrine when arrestee was never convicted of any crime)).  However, "[t]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988).

The independent-intermediary doctrine is not without exception, however.  "Despite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'"  *Deville*, 567 F.3d at 170 (quoting *Hand*, 838 F.2d at 1428).  The burden to "show that the official's malicious motive led the official to withhold relevant information or

otherwise misdirect the independent intermediary by omission or commission" falls to Plaintiff. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).  Regarding the taint exception at the Rule 12(b)(6) stage, "'mere allegations of taint' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 690.

No dispute exists that the Officers did not have a warrant to arrest Plaintiff.  Rather, the Officers' probable cause determination, if one existed at all, was made during the incident itself. Post-arrest, Plaintiff was taken before a magistrate judge.  Following the magistrate judge's determination of probable cause, bail was set.  Subsequent to bail being set, the Hopkins County Attorney's Office reviewed the cases and Informations were filed.

Plaintiff does not argue, either in his Complaint or in his response to the Officers' motion to dismiss, that the Officers somehow tainted the magistrate judge's deliberations.  Plaintiff does not allege that the Officers withheld any relevant information from the magistrate judge, despite the likely existence of a hearing transcript.  Plaintiff also does not claim that the Officers mislead the magistrate judge or misstated the facts surrounding Plaintiff's arrest—did the magistrate judge watch the body camera footage?  Did the Officers fully present the facts in a neutral way?  Plaintiff does not even assert facts that support an inference of a "mere allegation of taint."  Plaintiff does not address the magistrate judge's determination of probable cause—or any actions or statements by the Officers that would have potentially "tainted" the magistrate's determination of probable cause—at all, and that deficiency necessarily proves fatal to Plaintiff's unlawful arrest claim.  *See Deville*, 567 F.3d at 170 (noting that "Plaintiffs have not argued that defendants somehow tainted the justice of the peace's deliberations, meaning that review by that independent intermediary relieves them of liability for the alleged false arrest, and the district court thus properly granted summary judgment to them on this claim"); *Cf. McLin*, 866 F.3d at 690 (noting that "the complaint

pleads facts supporting the taint exception sufficient to survive a motion to dismiss[,]" including "the Defendants met for the purpose of conspiring to create false and misleading affidavits in order to obtain warrants for McLin's arrest[,]" and "the arrest warrants were issued on the basis of the falsified affidavits").

Plaintiff's pleadings are, at present, insufficient to support an unlawful arrest claim. However, Plaintiff has requested leave to further amend his Complaint "[i]n the event the [C]ourt finds Plaintiff's pleadings deficient" (Dkt. #35 at p. 16). The Officers oppose this leave, essentially advancing the argument that "futility is the most evident—and determinative—of Plaintiff's alternative request" (Dkt. #37 at p. 7).

According to Federal Rule of Civil Procedure 15(a), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "When considering whether to allow amendment, a court should consider factors such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *In re American Int'l Refinery, Inc.*, 676 F.3d 455, 466–67 (5th Cir. 2012) (quoting *In re Southmark*, 88 F.3d 311, 315 (5th Cir. 1996)).

After considering the factors promulgated by the Fifth Circuit, the Court finds that justice requires allowing Plaintiff leave to amend his Complaint to properly address the independent-intermediary doctrine. First, Plaintiff has asserted an unlawful arrest claim, and no facts indicate that the exclusion of the independent-intermediary doctrine is the product of undue delay, bad faith, or dilatory motive on the part of Plaintiff. Further, Plaintiff's first amendment to his Complaint came without Court direction—the Court has not yet been asked to allow leave. The Court also does not find that undue prejudice would result to the Officers—Plaintiff's First

33

Amended Complaint alleges the unlawful arrest due to lack of probable cause claim.  The Officers have already propounded argument as to the applicability of the doctrine, as evidenced in their motion to dismiss.  Requiring the Officers to defend against a claim already anticipated surely does not result in undue prejudice.  Finally, the Court does not find the amendment futile.

An amendment is futile if "the amended complaint would fail to state a claim upon which relief could be granted."  *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (first citing *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000); then citing *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997); then citing *Glassman v. Computervision Corp.*, 90 F.3d 617, 623 (1st Cir. 1996); and then citing *Rudolph v. Arthur Andersen & Co.*, 800 F.2d 1040, 1041–42 (11th Cir. 1986)).  "[T]o determine futility," the Court "will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)."  *Id.* (citing *Shane*, 213 F.3d at 115; then citing *Gen. Elec. Cap. Corp.*, 128 F.3d at 1085; and then citing *Glassman*, 90 F.3d at 623).  "'The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief.'"  *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357, at 601 (1969)).

After considering the facts as construed in a light most favorable to Plaintiff, the Court does not find the amendment futile.  Whether Plaintiff is able to plead facts sufficient to contravene the independent-intermediary doctrine is indeterminable at this point, however, the Court is convinced that Plaintiff should have one final opportunity to try.  If Plaintiff can, in fact, produce sufficient facts to cure the deficiencies contained herein, the Court could then delve into the other

arguments presented by the Officers, including the contention that Plaintiff did commit the crimes alleged and the Officers' claim for qualified immunity.[15]

## III.    Duplicative Claims

The Officers lastly claim that "Plaintiff's [presumed] Official Capacity Claims against the Officers are redundant as the City is already a party herein" (Dkt. #25 at p. 15) (brackets in original).  Plaintiff does not respond to this claim.

Notably, as pointed out in the Officers' motion to dismiss, "Plaintiff avers he is bringing claims against the Officers 'Individually and Officially[,]' although he never again mentions 'Official Capacity' when discussing his two discrete claims against the Officers" (Dkt. #25 at p. 24) (quoting Dkt. #23 at p. 11, 14).

The Court need not parse through Plaintiff's Complaint to determine whether official capacity claims were brought against the Officers because, ultimately, any official capacity claims are duplicative to those alleged against the City of Sulphur Springs.

"Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (quoting *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690 n.55 (1978)).  "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."  *Id.* at 166 (quoting *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).  An official-capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity."  *Id*. (emphasis in original).

---

[15] The Court emphasizes that, as the Complaint currently stands, no claim for relief for unlawful arrest has been sufficiently pleaded.  The Court makes no ruling as to the other arguments presented by the Officers.  Thus, the Court encourages Plaintiff to include any facts relevant to the unlawful arrest claim in his Second Amended Complaint.

The Court finds that Plaintiff's official capacity claims against the Officers, to the extent they exist, are duplicative of those asserted against the municipality.  *See Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (affirming the district court's dismissal of the allegations against all municipal officers and two employees of the Corps of Engineers in their official capacities as duplicative of those asserted against the municipality); *see also Dorris v. City of McKinney, Tex.*, 214 F. Supp. 3d 552, 559 (E.D. Tex. 2016); *Terry v. City of New Orleans*, 523 F. Supp. 2d 486, 492 (E.D. La. 2007) ("In essence, suing a party in his official capacity is duplicative of an action against the municipality which the official serves as an agent.")).  As such, these claims should be dismissed.

**City's Motion to Dismiss**

The City presents two issues to the Court for consideration: (1) "Whether the Plaintiff has plead[ed] any plausible *Monell* claim against the City; and" (2) "Whether, because Officers Davis and Findley are entitled to Qualified Immunity, the City of Sulphur Springs is equally immune from Plaintiff's federal claims" (Dkt. #26 at p. 2).  According to the City, "[a] careful review of [Plaintiff's] allegations reveals that Plaintiff's Federal claim against the City constitutes a mere formulaic recitation of the elements of the Municipal Liability *Monell* claim[] and adds nothing to the [missing] factual allegations" (Dkt. #26 at p. 4).

Plaintiff responds that he has sufficiently pleaded facts facially plausible for *Monell* liability.  Alternatively, Plaintiff seeks leave to amend his Complaint.

It is well-settled that a municipality is liable under § 1983 only when an injury is caused by the execution of the government's policy, practice, or custom. *See Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 694 (1978). To establish a municipality's liability, the plaintiff bears the burden of pleading and proving the existence of: (1) a policymaker; (2) an official policy; and

(3) a violation of constitutional rights whose moving force is the policy, practice, or custom. *See id*. at 691; *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012). To establish the third element, the plaintiff must show either: "(1) the policy itself violated federal law or authorized or directed the deprivation of federal rights or (2) that the policy was adopted or maintained by the municipality's policymakers with deliberate indifference as to its known or obvious consequences[.]" *Johnson*, 379 F.3d at 309 (citation removed). Negligence is insufficient. *Id*.

Generic assertions of municipal liability are also insufficient. *See Wright v. Denison Ind. School Dist.*, 2017 WL 2262778, at *4 (E.D. Tex. May 24, 2017). A plaintiff suing a government entity and claiming that some policy of the entity harmed them "should be able to muster allegations of 'past incidents of misconduct to others, multiple harms that occurred to the plaintiff[s] [themselves], misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy.'" *Id*. (citing *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842 (S.D. Tex. 2011)). The Fifth Circuit has defined "official policy" as:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Nobby Lobby, Inc. v. City of Dallas*, 970 F.2d 82, 92 (5th Cir. 1992). Governmental policy or custom "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *Peterson*, 588 F.3d at 847 (citations omitted).

A plaintiff must also "specifically identif[y]" the alleged policy, *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001), and where alleging "policy based on a pattern," must show the "pattern . . . occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is expected, accepted practice of . . . employees." *Davidson v. City of Stafford*, 848 F.3d 384, 396 (5th Cir. 2017). "Such 'policy' must derive from the government entity's recognized policy maker[.]" *Wright*, 2017 WL 2262778, at *4.

Here, Plaintiff claims the County had deficient policies and failed to properly train, supervise, and discipline its officers (Dkt. #12 at p. 16). Plaintiff alleges "the SSPD facilitated the very type of misconduct at issue by failing to adequately punish and discipline prior instances of similar conduct, thereby leading officers of the SSPD to believe their actions will never be scrutinized, which encouraged future abuses such as those that affected Plaintiff" (Dkt. #12 at p. 17). Specifically, Plaintiff asserts that: (1) "SSPD officers, who are accused of unlawful arrests, excessive force, or other civil rights violations, can be confident they will not be investigated in earnest[;]" and (2) Defendant City will refuse to recommend discipline or enforce discipline even when an officer has violated the civil rights of citizens" (Dkt. #12 at p. 17). After reviewing the Amended Complaint, Motions to Dismiss, Responses, and supplemental authorities, the Court finds that Plaintiff has stated plausible claims against the City upon which relief could be granted. The challenges made by Defendants are better suited for summary judgment, and Defendants' Motions to Dismiss are therefore denied as to the claims against the City.

## CONCLUSION

It is therefore **ORDERED** that Officers Davis and Findley's First Amended Motion to Dismiss (Dkt. #25) is hereby **GRANTED in part** and **DENIED in part**.

It is further **ORDERED** that the City of Sulphur Springs' First Amended Motion to Dismiss (Dkt. #26) is hereby **DENIED**.

Plaintiff shall file an amended complaint addressing the deficiencies in his unlawful arrest claim, as outlined in this Order, no later than fourteen (14) days following the issuance of this Order.

Plaintiffs § 1983 claims for unlawful arrest and unreasonable and excessive force alleged against the Officers in their official capacity, to the extent they exist, are hereby **DISMISSED as redundant**.

**IT IS SO ORDERED**.

 **SIGNED this 18th day of August, 2021.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE