# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| MICHAEL POLNAC, § | |
|     *Plaintiff,* § | |
| § | Civil Action No. 4:20-CV-666 |
| v. § | Judge Mazzant |
| § | |
| CITY OF SULPHUR SPRINGS, JOSHUA § | |
| DAVIS, and JUSTIN FINDLEY, § | |
|     *Defendants.* § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants Officers Davis and Findley's Motion for Judgment on the Pleadings on Plaintiff's Unlawful Arrest Claim (Dkt. #42). Having considered the motion and relevant pleadings, the Court finds the motion should be **DENIED**.

### BACKGROUND

This case arises from an incident involving two Sulphur Springs Police Department officers—Joshua Davis ("Davis") and Justin Findley ("Findley") (collectively, the "Officers")—and Plaintiff Michael Polnac ("Polnac"). The Officers arrived outside of Polnac's residence on October 22, 2018, in response to a 911 call by Polnac's girlfriend requesting help to jump her car. Upon their arrival, Polnac stepped onto his front porch. The Officers asked Polnac to identify himself, and he gave his full name and driver's license number. The Officers were not satisfied with his oral response alone, and a heated verbal exchange ensued. When Davis reached for a cup Polnac was holding and Polnac pulled away, the Officers pinned Polnac down and handcuffed him. The Officers placed Polnac under arrest and he was jailed overnight.

Post-arrest, Polnac was taken before a magistrate judge (the "Magistrate"). Following the

1

Magistrate's determination of probable cause, bail was set. Polnac was charged with (1) resisting arrest, search, or transportation and (2) interference with public duties. Polnac was eventually acquitted for resisting arrest, search, or transportation and the charge for interference with public duties was dismissed.

Polnac filed suit on September 2, 2020 (Dkt. #1). On December 21, 2020, the Officers moved to dismiss Polnac's First Amended Complaint (Dkt. #25). In his First Amended Complaint, Polnac asserted claims against the Officers in both their individual and official capacity for unlawful arrest and excessive force under 42 U.S.C. § 1983 (Dkt. #23). Polnac also brought a *Monell* claim under 42 U.S.C. § 1983 against the City.

The Court entered its Memorandum Opinion and Order on August 18, 2021 (the "Prior Order") (Dkt. #39). The Court granted in part and denied in part the Officers' motion. Polnac's excessive force claim survived the motion to dismiss, and the Court held the Officers were not entitled to qualified immunity on such claim (Dkt. #39 at pp. 28, 29). The Court also held Polnac's claim for unlawful arrest did not meet the pleading standard, but granted Polnac leave to amend (Dkt. #39 at p. 33). Finally, the Court dismissed Polnac's Section 1983 claims alleged against the Officers in their official capacity (Dkt. #39 at p. 39). Polnac filed his Second Amended Complaint on August 30, 2021 (Dkt. #40).

The Officers moved for judgment on the pleadings on September 13, 2021 (Dkt. #42). Polnac responded on September 22, 2021 (Dkt. #43). The Officers replied on September 25, 2021 (Dkt. #44).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not the delay trial—a party may move for judgment on the pleadings." FED. R. CIV.

P. 12(c). "A motion brought pursuant to Rule 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (citation omitted); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002). "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 420 (5th Cir. 2001) (citing *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 n.8 (5th Cir. 2000)).

"Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." *Great Plains Tr.*, 313 F.3d at 312 (quoting *Hughes*, 278 F.3d at 420). The standard applied under Rule 12(c) is the same as that applied under Rule 12(b)(6). *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must

then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing [C]ourt to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

## ANALYSIS

The Officers raise two limited issues in their motion. First, the Officers seek judgment on the pleadings for Polnac's failure to plead facts supporting an exception to the independent-intermediary doctrine. Second, the Officers argue Polnac cannot defeat their qualified immunity

defense to his claim for unlawful arrest. Polnac responds that he has sufficiently pleaded facts to overcome the independent-intermediary doctrine and qualified immunity defense such that his claim survives the current motion.

That said, before the Court addresses the merits of the parties' arguments, the Court will first consider the Officers' request that the Court take judicial notice of Polnac's Arrest Report (the "Arrest Report"), the Magistrate's Warning for Resisting Arrest Search or Transport (the "First Warning"), and the Magistrate's Warning for Interference with Public Duties (the "Second Warning") (collectively, the "Warnings")[1] (Dkt. #42, Exhibits 5–7).

## I.   Judicial Notice

Federal Rule of Evidence 201 provides that a court may take judicial notice of an adjudicative fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201(b). The Fifth Circuit has held that judicial notice may be taken of "[s]pecific facts and propositions of generalized knowledge which are capable of immediate and accurate determination by resort to easily accessible sources of indisputable accuracy." *Turner v. Lieutenant Driver*, 848 F.3d 687, 692 n.63 (5th Cir. 2017) (quoting *Weaver v. United States*, 298 F.2d 496, 498–99 (5th Cir. 1962)). If a court takes judicial notice, "on timely request, a party is entitled to be heard on the propriety of taking judicial notice and the nature of the fact to be noticed," even if the court takes judicial notice before notifying a party. FED. R. EVID. 201(e).

As an initial matter, the Fifth Circuit has "note[d] approvingly" that "'[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred

---

[1] The Warnings were issues by the Magistrate in Hopkins County, Texas. The Warnings indicate that the Magistrate made a probable cause finding for Polnac's arrest.

5

to in the plaintiff's complaint and are central to [his] claim.'" *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). According to the Fifth Circuit, "[i]n so attaching, the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated." *Id.* at 499. Stated differently: "for a document to be incorporated into the pleadings under this exception, it must (1) be attached to a defendant's motion to dismiss; (2) be referred to in the plaintiff's complaint; and (3) be central to the plaintiff's claims." *Kaye v. Lone Star Fund V (U.S.), L.P.*, 453 B.R. 645, 662 (N.D. Tex. 2011).

The Officers attached the Arrest Report to their motion (Dkt. #42, Exhibit 5), and Polnac references the Arrest Report in his Second Amended Complaint (Dkt. #40 ¶ 21). Thus, the first and second elements are met. The Court also finds the Arrest Report is essential to Polnac's claims. As the Court will address more extensively below, to overcome the independent-intermediary doctrine, Polnac must establish facts showing the Officers somehow tainted the Magistrate's determination that probable cause existed for Polnac's arrest. *Deville v. Marcantel*, 567 F.3d 156, 170 (5th Cir. 2009). In Polnac's response to the current motion, Polnac points to his allegations regarding defects in the Arrest Report as a basis for possible taint (Dkt. #43 at p. 7 (citing Dkt. #40 ¶ 21)). Thus, the Arrest Report is central to Polnac's claim that the independent-intermediary doctrine does not bar his claim for unlawful arrest. As such, the facts detailed in the Arrest Report are subject to judicial notice.

As for the Warnings, Polnac does not reference the documents themselves in his Second Amended Complaint. However, the Warnings reflect the Magistrate's finding of probable cause for arrest, which Polnac refers to extensively in his Second Amended Complaint. And again, and

6

the Magistrate's determination of probable cause is central to the issue of the independent-intermediary doctrine. Accordingly, the Court is satisfied the exception applies. Even if the Warnings are not central to Polnac's claim, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record." *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994)). "A public record is one required by law to be kept, or necessary to be kept, in the discharge of a duty imposed by law or directed by law to serve as a memorial and evidence of something written, said, or done." 64 TEX. JUR. 3d *Records and Recording Laws* § 1 (2021). Notably, "public records, by definition, presume public access." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021). Accordingly, "[j]udicial records are public records." *Id*. "Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice." *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018) (first citing FED. R. EVID. 201; and then collecting cases). The Warnings undoubtedly constitute public records. Accordingly, the Court takes judicial notice of the details contained therein.

## II.    Unlawful Arrest

In the Prior Order, the Court devoted a significant portion of its analysis to a discussion of the independent-intermediary doctrine and its exceptions (Dkt. #39 at pp. 30–32). Because the parties now disagree over whether the Second Amended Complaint states a claim for unlawful arrest, the Court repeats what it has already stated regarding the independent-intermediary doctrine.

The independent-intermediary doctrine "becomes relevant when—as here—a plaintiff's claims depend on a lack of probable cause to arrest him." *Buehler v. City of Austin/Austin Police Dep't*, 824 F.3d 548, 553 (5th Cir. 2016) (first citing *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d

7

808, 813 (5th Cir. 2010); and then citing *Russell v. Altom*, 546 F. App'x 432, 436–37 (5th Cir. 2013)). "Under the independent-intermediary doctrine, 'if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for the Fourth Amendment violation.'" *Winfrey v. Rogers*, 907 F.3d 483, 496 (5th Cir. 2018) (quoting *Jennings v. Patton*, 644 F.3d 297, 300–01 (5th Cir. 2011) (internal quotations omitted)).

Notably, the Fifth Circuit has "applied this rule even if the independent intermediary's action occurred after the arrest, and even if the arrestee was never convicted of any crime." *Buehler*, 824 F.3d at 554 (first citing *Taylor v. Gregg*, 36 F.3d 453, 455, 456–57 (5th Cir. 1994), *overruled on other grounds by Castellano v. Fragozo*, 352 F.3d 939, 949 (5th Cir. 2003) (en banc) (regarding intermediary's action occurring after arrest); then citing *Russell*, 546 F. App'x at 434, 436–37 (regarding application of the independent intermediary doctrine when arrestee was never convicted of any crime); and then citing *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982) (also regarding application of the independent-intermediary doctrine when arrestee was never convicted of any crime)). However, "[t]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Hand v. Gary*, 838 F.2d 1420, 1427–28 (5th Cir. 1988).

The independent-intermediary doctrine is not without exception, however. "Despite review by an independent intermediary, the initiating party may be liable for false arrest if the plaintiff shows that 'the deliberations of that intermediary were in some way tainted by the actions of the defendant.'" *Deville*, 567 F.3d at 170 (quoting *Hand*, 838 F.2d at 1428). The burden to "show that the official's malicious motive led the official to withhold relevant information or

8

otherwise misdirect the independent intermediary by omission or commission" falls to Plaintiff. *McLin v. Ard*, 866 F.3d 682, 689 (5th Cir. 2017).  Regarding the taint exception at the Rule 12(b)(6) stage, "'mere allegations of taint' . . . may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *Id.* at 690.

There is no dispute that the Officers arrested Polnac without an arrest warrant.  Further, Polnac does not dispute that the independent-intermediary doctrine applies here.  Indeed, the facts of Polnac's arrest were presented to a Magistrate post-arrest, and the Magistrate determined probable cause for Polnac's arrest existed.  Rather, Polnac argues the Officers did not present all relevant facts to the Magistrate, and thus this case presents an exception to the rule.

After reviewing the current complaint, the motion, and the response, the Court finds that Polnac stated plausible claims for purposes of defeating a Rule 12(c) motion.  In its Prior Order, the Court held Polnac's First Amended Complaint was insufficient to state a claim for unlawful arrest.  The Court noted that Polnac failed to argue or present facts which would support an inference of a mere allegation of taint (Dkt. #39 at p. 32).  The Court listed relevant facts which would support such an inference: whether the Officers withheld information from the Magistrate; whether the Officers presented facts in a non-neutral way; whether the Officers mislead the Magistrate by, for example, withholding the bodycam footage.

In the Second Amended Complaint, Polnac listed allegedly false statements and misrepresentations the Officer's made to the Magistrate, along with facts which the Officers omitted from the Arrest Report:

> But as shown in their Arrest Report, Officers Findley and Davis **falsely stated** that (a) Polnac had refused to provide his identification (although he had verbally provided identification), (b) Polnac had impeded lawful detention (when they had not told him what he was being arrested for or that he was being detained before Officer Davis grabbed Polnac's left arm), and (c) they had used the least amount of force necessary to gain compliance (although they had both thrown the weight of

9

>their bodies on top of Polnac when Polnac had not moved a single step from his standing position). In their Arrest Report, Officers Findley and Davis also **omitted** relevant facts that (a) no crime had been reported by the 911 caller or girlfriend, (b) Polnac's girlfriend had stated immediately upon their arrival that she only needed help to jumpstart her vehicle, and (c) they had not told Polnac at any time what charge he was under arrest for to be detained. Rather, as shown in their Arrest Report, Officers Findley and Davis illogically **misrepresented** that they were in fear that Polnac might have access to weapons inside his residence while at the same time, they arrested him because he did not go get an identification card (presumably inside his residence) when they wanted Polnac's identification card. Officers Findley and Davis conspired to create a trumped-up charge against Polnac. They made false and deceptive assertions, left out important facts and relevant information, and did not show the entire body camera footages in order to dupe a judge in finding probable cause for Polnac's arrest and later to dupe or conspire with a Hopkins County attorney to prepare, file, and initiate two criminal cases.

(Dkt. #40 at p. 8 ¶ 21) (emphasis in original). Viewing these allegations in a light most favorable to Polnac and drawing all appropriate inferences, the Second Amended Complaint pleads facts supporting the exception to the independent-intermediary doctrine sufficient to survive a motion for judgment on the pleadings. *See Wilson v. Stroman*, --- F.4th---, 2022 WL 1261660, at *7 (5th Cir. 2022) (citing *McLin*, 866 F.3d at 689–90 (holding mere allegations of taint sufficient to survive motion to dismiss)).

### III. Qualified Immunity

To establish § 1983 liability, a plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 678. Public officials whose positions entail the exercise of discretion may be protected by the defense of qualified immunity from personal liability. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts the defense of qualified immunity and has established that the alleged actions were conducted pursuant to the exercise of his discretionary authority, the burden then shifts to the plaintiff to rebut this defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002).

Courts have historically conducted a two-pronged analysis to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). First, a court must determine whether a "constitutional right would have been violated on the facts alleged." *Flores v. City of Palacios*, 381 F.3d 391, 395 (5th Cir. 2004). Second, if a constitutional right was violated, a court then determines whether "the defendant's actions violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* The law may be deemed to be clearly established if a reasonable official would understand that his conduct violates the asserted right. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The official's subjective motivation is irrelevant to the qualified immunity defense except as far as it is relevant to the underlying constitutional claim. *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998). A government official's conduct violates clearly established law when, at the time of the challenged conduct, "[t]he contours of the right [are] sufficiently clear" such that every "reasonable official would have understood that what he is doing violates that right." *Creighton*, 483 U.S. at 640. The clearly established inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate. *See id.*; *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The Supreme Court instructs courts "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236–37 (2009).

It is plain that Polnac has a clearly established constitutional right to be free from detention absent reasonable suspicion and to be free from arrest absent an arrest warrant or probable cause. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 209 (5th Cir. 2009) (citing *Terry v. Ohio*, 392 U.S. 1, 29 (1968)); *Freeman v. Gore*, 483 F.3d 404, 411 (5th Cir. 2007). Therefore, the issue is whether

the Officers' conduct in detaining and arresting Polnac was objectively unreasonable in light of clearly established law. The Officers argue they are entitled to qualified immunity because their conduct was objectively reasonable in light of Polnac's "criminal behavior" (Dkt. #42 at p. 14). Polnac responds that no reasonable officer would have arrested Polnac based off of the facts alleged (Dkt. #43 at p. 9).

When officers arrest an individual without a warrant, as is the case here, the arrest must be accompanied by probable cause. *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996). Nonetheless, even law enforcement officials who reasonably but mistakenly conclude that probable cause or reasonable suspicion is present are entitled to immunity. *See Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). "[A]n officer who lacks probable cause but who can 'point to specific and articulable facts' that 'reasonably warrant' the inference that 'a particular person' is committing a crime may briefly detain that person in order to 'investigate the circumstances that provoke suspicion.'" *Hilton*, 568 F.3d at 209 (citing *Terry*, 392 U.S. at 29).

After considering applicable precedent and Polnac's Second Amended Complaint, the law at the time of Polnac's arrest clearly established that it was objectively unreasonable for the Officers to arrest Polnac. When the Officers arrived to help Polnac's girlfriend jump her car, Polnac emerged from his home and stood on his porch. Shortly thereafter, the Officers approached Polnac and repeatedly asked for his identification. Polnac "provided [the identification] by stating his full legal name and his driver's license number" (Dkt. #40 ¶ 7). Thus, Polnac complied with

the Officers' instructions. When the Officers asked for physical identification, Polnac "stated he did not need to show identification because he was at his house" (Dkt. #40 ¶ 8). According to Polnac, "because [he] refused to show an identification card, raised his voice, and used [profanity] as part of his freedom of speech, Officer Davis then shouted at [Plaintiff] and tried to grab a cup held by [Plaintiff]" (Dkt. #40 ¶ 9). However, merely arguing with the Officers does not deprive Polnac of his of his rights. *See Freeman*, 483 F.3d at 414 (holding that a plaintiff's yelling and screaming at deputies about their right to search her home "alone does not take her conduct out of the realm of speech").

Moreover, failing to provide identification is also not grounds for arrest. *Gonzalez v. Huerta*, 826 F.3d 854, 858 (5th Cir. 2016) (citing *Brown v. Texas*, 443 U.S. 47, 52 (1979)). ("[E]ven assuming that purpose is served to some degree by stopping and demanding identification from an individual without any specific basis for believing he is involved in criminal activity, the guarantees of the Fourth Amendment do not allow it."); *Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 188 (2004)). That said, Polnac did pull away when Officer Davis attempted to take a cup from Polnac's grasp. However, Polnac alleges that when he was pinned down, Officer Davis told him that Officer Findley "asked you for ID and you want to refuse to supply it" (Dkt. #40 ¶ 14). Thus, the basis for the arrest appears to be the lack of identification, not the pulling away. *See Turner*, 848 F.3d at 694–95 ("The only potential reason the officers gave Turner for arresting him that can be gleaned from the amended complaint is Turner's failure to identify himself: He alleges that, after he was handcuffed, Grinalds told him '[t]his is what happens when you don't ID yourself.'"). The Court is not convinced Polnac even refused to provide identification given that he provided his full name and driver's license number orally. Even so, refusing to provide identification cannot be the basis for arrest. *Id.* at 695.

13

Thus, the Court is satisfied that Polnac has alleged a violation of his Fourth Amendment right to be free from unlawful arrest. *Flores*, 381 F.3d at 402 ("An arrest is unlawful unless it is supported by probable cause.").

## CONCLUSION

It is therefore **ORDERED** that Defendants Officers Davis and Findley's Motion for Judgment on the Pleadings on Plaintiff's Unlawful Arrest Claim (Dkt. #42) is hereby **DENIED**.

**IT IS SO ORDERED.**

SIGNED this 29th day of April, 2022.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE